## FEDERAL CEMENT CO. v. SHAFFER.

(District Court, E. D. Pennsylvania.   December 21, 1916.)

### No. 1467.

CORPORATIONS ☞474—BONDS—ASSIGNMENT—RIGHT TO INTEREST.

   An assignment, by way of pledge of corporate bonds, which stipulated for the payment of interest in half yearly installments, but which were not accompanied by interest coupons, does not transfer to the assignee the right to interest due, but not paid, before the assignment, but only the interest then accrued, but not yet due, and the interest thereafter to accrue, notwithstanding provisions in the assignment authorizing the assignee to sell or become the absolute owner of the bonds and to collect the interest.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854; Dec. Dig. ☞474.]

Interpleader by the Federal Cement Company against William B. Shaffer.  Sur trial hearing on bill, answer, and proofs.  Decree directed in accordance with opinion.

See, also, 235 Fed. 912, and 229 Fed. 1021, 143 C. C. A. 662.

W. A. MacEldowney, of Philadelphia, Pa., and Paul C. Hamlin, of Philadelphia, Pa., for complainant.

Smith, Paff & Laub, of Easton, Pa., for defendant.

George J. Edwards, Jr., of Philadelphia, Pa., for intervener Beck.

Henry C. Thompson, Jr., of Philadelphia, Pa., for intervener Bridgewater Estate.

DICKINSON, District Judge.  The present condition of this litigation is an illustration of the confusion which always results from not squarely facing a difficulty, but seeking, as one is naturally and properly enough tempted to do, to find some way of evading it.  The only real question between the parties to the transactions now under investigation may be expressed in a few words, and its discussion compressed into as small a compass.  Abstractly stated, it is this: Does the transfer of a bond, which admittedly carries with it interest accruing and to accrue, also carry with it installments of interest which were past due and payable before the transfer?

The case might have been presented as involving only this question, or at least have been reduced to this.  As it has been presented, however, and the record being in the condition in which it is, an analysis of the pleadings and the proofs is necessary in order that we may be sure of what the proper decree to be entered is.  Starting with the beginnings of the present dispute, we find the Federal Cement Company issued a series of bonds, which were apparently secured by the stock of another company, pledged for the payment of the bonds in much the same way in which a mortgage of real estate is usually given to secure a corporate bond issue.  There was the like usual promise to pay the interest in half yearly installments and the principal at maturity.  The common interest coupon device was not adopted.  There was a provision for registering the ownership of the bonds, and the agreement was

to pay the interest and principal when due to the registered owner. Of these bonds, 81 were registered in the name of William B. Shaffer. The consideration for the bonds had been in fact paid by Sarah A. Shaffer, the wife of William B. Shaffer, and the registration in his name was a mistake made by the officers of the cement company. The bonds should have been registered in the name of Shaffer as attorney in fact for his wife, instead of in his own name as the owner. On December 12, 1911, Shaffer filed a voluntary petition in bankruptcy, and an adjudication followed. The bonds were not returned in his schedule of assets, but were claimed by Mrs. Shaffer as her property. Proof was made of her ownership and of the mistake made in the registration, and as a result the trustee in bankruptcy was directed to and did disclaim all claim of title to the bonds, and the assets of the bankrupt estate were administered with these bonds excluded. Application was then made to the cement company to permit a transfer of the bonds to Mrs. Shaffer, the real owner. The bonds, or some of them, had before this time been pledged as collateral. The application to register the transfer was joined in by and accompanied with written waivers from the trustee in bankruptcy and the collateral holders. Why the company should have refused is not clear. The facts are attested by the responsive answer filed in this proceeding, and are uncontradicted. The owner might, of course, have tested her right to registration by appropriate proceedings, but took instead what may have seemed at the time the easier course of seeking to remove objections by assigning the bonds and having the assignee apply and having the collateral holders apply. None of these efforts were successful. Moreover, the company withheld the interest which was due on the bonds. This resulted in the bringing of an action by the registered holder against the company for the interest, and this was followed by the filing of the original bill in this case. The bill called upon the registered holder to make discovery of all claims of ownership in the bonds, to establish his own title thereto, and to refrain from pressing his suit for the interest.

The defense interposed to the action and the bill as filed seemed to be based upon the theory that the registered owner was engaged in an effort to defraud his creditors, which effort it was the right and duty of the company to frustrate. Its rights and its defense to the demand for the payment of the interest was, however, limited to the legal defense that the action against it had not been brought by a proper legal plaintiff, or the equitable defense that it was entitled to protection against a double payment. The first was ruled against it, and it made a very tardy resort to the latter by paying into court the amount of the interest in pursuance of leave granted, and by filing a supplemental bill in the nature of an interpleader with itself in the rôle of a stakeholder.

It is charged by the defendant with having in these bills made a very uncandid use of the applications for registration by presenting these several applications as if made as claims of ownership by different persons in conflict and antagonism with the ownership as registered. On the face of this showing (without the explanation given by the defendant) a strong need for protection is certainly presented. With the explanation of the defendant the charge that the company had

taken an arbitrary, dog in the manger attitude would seem to be well founded.

By the pleadings and the proofs three classes of claimants upon the fund appear: One, that of William B. Shaffer, who claims as registered owner; the second, those who claim as collateral holders of some of the bonds; the third, an attachment creditor in proceedings against Shaffer as defendant and the cement company as garnishee.

A fully responsive answer was filed to the bill and supplemental bill. By it the facts, as outlined above, are presented, and a frank avowal of all the facts bearing upon the ownership of the bonds and full discovery of all claimants thereto is made. The answer sets forth that the real ownership of the bonds was and is in Sarah A. Shaffer; that William B. Shaffer owns the interest overdue and payable; that Wilson E. Beck has an attachment claim upon the fund through proceedings against the cement company as garnishee, and that certain of the bonds had been pledged as collateral, but the pledgees had no other interest therein, and no claim to the back interest.

It is further averred in the answer, by way of cross-bill, as a basis for affirmative relief, that the cement company had not paid into court the full amount they were ordered to pay. The answer prays, by way of affirmative relief, that the cement company be required to pay the balance of what is due by them into court, and the overdue interest part of the fund be awarded to the defendant Shaffer after payment of the judgment in attachment. William Graham, surviving executor of Francis M. Bridgewater, deceased, intervened as a party claimant, as did also Wilson E. Beck, the attaching creditor.

By way of anticipation of the proofs it may be stated that the cement company notified by registered letter a number of parties of the pendency of the proceedings, and warned them to appear and defend their interests. Among those so notified was the Easton National Bank. The bank did not ask to intervene, but filed a paper, which it terms an answer, in which it asserts itself to be a collateral holder of 32 of the bonds, designating them by serial numbers, and stating them to be of the face value of $16,000.

The only claimants upon the fund at the trial were William B. Shaffer, Wilson E. Beck, and the Bridgewater Estate. Beck claimed both as an attaching creditor and as collateral holder of some of the bonds. We understand, however, that his attachment claim embraces the other, and as the answer concedes his right to the payment of his attachment claim, there is no occasion to further discuss it.

It may be necessary to give the whole basis for the Bridgewater claim, and this we will do, but premise it with this statement: Some of the interest payments which make up this fund were due and payable before the pledge of the bonds. Some, although partly accrued, fell due after, and some wholly accrued after. The right of the pledgee to the interest accruing and to accrue after the giving of the pledge is admitted. In this aspect of the case, the only question in the abstract is that first suggested, subject to whatever modification any special features of the pledge itself or special facts appearing at the

trial would bring about. This latter possibility makes it desirable to go over the proofs in detail.

To bring the question proposed back to mind, we repeat the fact that these bonds contained only the covenant of the obligor to pay the interest. This covenant was in the body of the bond. The bonds were not coupon bonds, and there was no separate covenant to pay interest, in the sense of detachable coupons, bearing a complete and separate promise to pay. There was a stipulation also, in the nature of an amendment of the pleadings, correcting an error made in the serial numbers of the bonds pledged. The correction was to give the numbers 22 to 27 and 46 to 64 and 204 to 210 and 220 to 223 (all numbers inclusive) in place of those shown by the pleadings. The assignment was made March 4, 1913. This admittedly carried the interest for four out of the seven interest installments in court, and therefore to four-sevenths of this part of the fund.

The evidence on behalf of the claimant consists of an agreement pledging the 36 bonds as collateral security for a loan, which was in legal effect an assignment. There is in it and the subsequent agreement a distinct acknowledgment of the indebtedness and the pledge and an undertaking to execute any further transfers necessary to effectuate the agreement. It was stipulated that the usual form of transfer was executed and tendered to the cement company accompanying a demand for registration on April 11, 1913.

This overlong prelude is doubtless unnecessary but it is made to disclose all possible questions which may arise. For the reason already stated, we confine ourselves to the one argued. The others, if raised, may be disposed of when the formal decree comes to be entered. We will, however, advert to one of them. The papers of record show at least a possible claim of the Easton National Bank. The bank was notified of the pendency of this proceeding and warned to present its claim. It has not formally intervened as a party, and no proofs of its claim were submitted. Some understanding should be reached as to this claim. We have no space to follow the argument on behalf of the Bridgewater Estate. We do not see that basing its claim on the authority given the pledgee to sell or to become the absolute owner of the bonds, or on the provision permitting the pledgee to collect the interest, advances the argument. The pledgee did not in fact sell, and, if he had, he would have assigned only what he had by the assignment to him. The clause relating to the collection of the interest was certainly not meant to add to the rights of the pledgee. The use of the words "accrued or to accrue" has no significance, because this agreement was not made until October, 1915, and at that time all the interest now in court was due and there was accrued interest, to which the words related, which admittedly belonged to the pledgee.

The record of the action to recover the debt and the evidence of the value of the bonds is of no help to us, and the motion to strike it out is allowed. The question, therefore, recurs of whether a flat assignment of a bond passes the past-due interest. The bonds, in addition to the written assignment, were physically delivered. If there had been detachable interest coupons still attached, it might be well

argued that title to the coupons (although past due) passed by delivery. Had the overdue coupons been detached and not delivered there would be no basis for this argument. Does the mere assignment and delivery of the bonds carry the past-due interest? The efforts of counsel have not brought to light any direct ruling of the question. We have the aid for what they may be worth of the distinction between interest, the obligation to pay which arises out of a specific contract, and interest, which is an incident of the debt, and damages by way of or as measured by a computation of interest. We have also the doctrine established of the distinction in this respect between dividends which have been declared and passed to the credit of the stockholder and dividends which have been earned but not yet declared. We have also the doctrine that an assignment carries accruing interest not yet payable. Being without the aid of any authoritative ruling or discussion, it must be determined on general principles.

The facts are here that the obligation to pay interest and to pay principal are severable and distinct, and as the payments are to be made at different times, they are thus separated. This gives a right of action for each, and such right has been upheld in this case. We have also the fact of a separation of interest from the principal by the bringing of such an action and what followed it. We have the circumstance that the text-writers who have dealt with the rights of pledgees and assignees state (although not expressly so confining them) the right to be a right to the interest thereafter payable. We have also the line of cases in which dividends on preferred stock (in the nature of interest allowances) due and passed to the credit of the stockholder, but which have not in fact been paid, would not pass by an agreement of later date. In every case of conveyance what passes is what was in legal intendment conveyed, into which actual intent sometimes enters. When the actual intent does enter, as in this instance, if it is clear it is controlling. If it is not expressed, then the legal import of the words used is to be found. Here the actual intent of the parties might have been to pass or not to pass all the interest. If this intent had been expressed in apt words, effect would have been given to what was expressed. The fact may be and doubtless was that the pledge was given without thought of the distinction now made. We are therefore driven to the legal import of the words used, and to assume this was the intent. The governing principle would appear to be that in case of the assignment of a continuing contract moneys overdue under a prior breach do not pass. Cyc. 4, p. 69, § 4. Here there had been a breach of the covenant to pay this prior interest, and the moneys thus overdue and payable did not pass by the assignment which was made after the breach.

The finding, therefore, is that no more than the interest accruing and to accrue passed with the pledge of the bonds. If the parties are agreed that the question thus discussed is the only one upon which the court is asked to pass, a decree embodying this finding will be entered, and the question of costs and other matters may be disposed of in settling the form of decree.

A form of decree in accordance herewith may be submitted.